Joan E. Farr
7145 Blueberry Lane
Derby, Kansas 67037
Ph: 918-698-3289

**FILED**
U.S. District Court
District of Kansas

APR 2 1 2021

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Joan E. Farr, individually, *pro se,* and in the interests of innocent American citizens,<br><br>Plaintiff,<br><br>vs.<br><br>United States Government, Department of Defense, Department of Justice, United States Senator James Inhofe, Federal Bureau of Investigation, Central Intelligence Agency, Christine (a state actor), Internal Revenue Service,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.   2:21-cv-2183-JWB-TJJ |

### A.   COMPLAINT

COMES NOW the plaintiff, Joan E. Farr, individually *pro se*, and in the interests of innocent American citizens, and files this Complaint against the defendants as follows:

### B.   PARTIES

1.   Plaintiff, Joan E. Farr, is an individual representing herself *pro se* with residence located at 7145 Blueberry Lane, Derby, Kansas 67037.  Plaintiff, Joan E. Farr, is hereinafter referred to as the same, "Ms. Farr," or "plaintiff."

2.   Defendant, the United States Government, is a government entity with principle offices located in Washington, D.C.  The United States Government may be served by and through the United States Attorney General, Merrick B. Garland, at his principle place of business, the Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530.  Defendant, the United States Government, is hereinafter referred to as the same, "the government," "DOD," "DOJ," "FBI," "CIA," "NSA," "alphabet soup," Christine (a state

actor), or any and all of the other defendants referred to as well as other known/unknown state actors.

3.   Defendant, the Department of Defense and its agencies thereof, is a government entity with principle offices located in Washington, D.C.  The United States Government may be served by and through its Secretary of Defense, Lloyd J. Austin, III, at his principle place of business, The Pentagon, Washington, D.C.  20301-1155.  Defendant, the Department of Defense and itsagencies thereof, is hereinafter referred to as the same, "DOD," "FBI," "CIA," "NSA," "alphabet soup," "Christine," "the government," and any and all other known/unknown state actors within the government and its agencies thereof.

4.   Defendant, the Department of Justice and its agencies thereof, is a government entity with principle offices located in Washington, D.C.  Defendant, the Department of Justice and its agencies thereof, may be served by and through the United States Attorney General, Merrick B. Garland, at his principle place of business, the Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C.  20530. Defendant, the Department of Justice, is hereinafter referred to as the same, "DOJ," "Federal Bureau of Investigation (FBI)," "CIA," "NSA," "alphabet soup," "Christine," "the government," and any and all other known/unknown state actors within the government and its agencies thereof.

5.   Defendant, United States Senator James Inhofe, is an individual who works for the United States government as a senator in Congress acting to represent the people of the State of Oklahoma in federal matters. Defendant, United States Senator James Inhofe, may be served summons at his place of business: 3817 NW Expressway #780, Oklahoma City, Oklahoma 73112. Defendant, United States Senator James Inhofe is hereinafter referred to as the same, "Senator Inhofe," "DOD," "DOJ," "FBI," "CIA," "NSA," "the government," "alphabet soup," "Christine," any and all of the other defendants referred to as well as any other known/unknown state actors within the government and its agencies thereof.

6.   Defendant, the Federal Bureau of Investigation and its state agencies thereof, is a government entity with principle offices located in Washington, D.C.  Defendant, the Federal Bureau of Investigation and its state agencies thereof, may be served by and through the United States Attorney General, Merrick B. Garland, at his principle place of business, the Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C.  20530. Defendant, the Federal Bureau of Investigation, is hereinafter referred to as the same, "FBI," "DOJ," "NSA," "the government," "alphabet soup," "Christine," "Senator Inhofe," any and all

other known/unknown state actors within the government and its agencies thereof.

7. Defendant, Central Intelligence Agency, is a government entity with principle offices located in Washington, D.C. Defendant, Central Intelligence Agency, may be served by and through the Director of National Intelligence, William J. Burns, at his principle place of business: Central Intelligence Agency, Washington, D.C. 20501. Defendant, Central Intelligence Agency, is hereinafter referred to as the same, "CIA," "DOD," "DOJ," "NSA," "the government," "alphabet soup," "Christine," "poser(s)," "Senator Inhofe," and any and all other known/unknown state actors within the government and its agencies thereof.

8. Defendant, Christine (last name unknown), is an individual and state actor who works for the United States government as a "poser" and is also a licensed practical nurse at St. Francis Regional Medical Center in Wichita, Kansas. Defendant, Christine (last name unknown), may be served summons at her place of business: Central Intelligence Agency, Attn: William J. Burns, Director of National Intelligence, Washington, D.C. 20501. Defendant, is hereinafter referred to as the same, "the poser," "CIA," "DOD," "DOJ," "FBI," "NSA," "the "government," "alphabet soup," "Senator Inhofe," and any and all other known/unknown state actors within the government and its agencies thereof.

9. Defendant, the Internal Revenue Service, is a government entity with principle offices located in Washington, D.C. Defendant, the Internal Revenue Service, may be served by and through its Chief Counsel, William M. Paul, at his principle place of business, IRS Office of Chief Counsel, Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, D.C. 20224. Defendant, the Internal Revenue Service, is hereinafter referred to as the same, "IRS," "the government," "alphabet soup," "Senator Inhofe," and any and all other known/unknown state actors within the government and its agencies thereof.

## C. FACTS PERTAINING TO THE PARTIES

10. Plaintiff Joan E. Farr is a United States citizen who was born in Weisbaden, Germany. She is a resident of Sedgwick County in the State of Kansas and is also a resident of Tulsa County in the State of Oklahoma, both of which are in the United States of America.

11. Defendant, the United States Government, consists of a President, his cabinet, Congress and various local, state and national actors and entities engaged in authoritative control and governance of the United States of America. The current president is President Joseph Biden.

3

12. Defendant, the United States Government, is represented in this action by 23 agencies, bureaus or offices. The principle members are the Department of Defense, Department of Justice, Federal Bureau of Investigation, Central Intelligence Agency and the Internal Revenue Service.

13. Defendant, the Department of Defense (DOD), is an agency under the President that is engaged in defending the United States of America against attacks by foreign countries as well as attacks within by both foreign and domestic individuals and/or entities. They also conduct surveillance on the American people.

14. Defendant, the Department of Justice (DOJ), is a federal executive department of the U. S. government responsible for the enforcement of the law and administration of justice in the United States. They also conduct surveillance on the American people.

15. Defendant, United States Senator James Inhofe, is a Republican United States Senator from the State of Oklahoma. He is a career politician who has been in Congress for 33 years.

16. Defendant, United States Senator James Inhofe, served as Chairman of the Armed Services Committee from 2018 – 2020 which is over all branches of the military service.

17. Defendant, the Federal Bureau of Investigation (FBI), is the domestic intelligence and security service of the United States, which simultaneously serves as the nation's prime federal law enforcement organization. Operating under the jurisdiction of the U.S. Department of Justice, the FBI is concurrently a member of the U.S. intelligence community and reports to both the U.S. Attorney General and the Director of National Intelligence. They also conduct surveillance on the American people.

18. Defendant, the Central Intelligence Agency (CIA), is the domestic intelligence and security service of the United States. Defendant, the Central Intelligence Agency, is a member of the U.S. intelligence community and reports to the President of the United States and the Director of National Intelligence. They also conduct surveillance on the American people.

19. Defendant, Christine (last name unknown), is a state actor and is a Kansas resident who lives in the Wichita, Kansas area. In addition to her employment as a licensed practical nurse at Via Christi St. Francis Hospital, she is employed by the government as a "poser" to conduct surveillance on plaintiff and engage in a romantic relationship with her old boyfriend to break them up and steal his assets.

20. Defendant, the Internal Revenue Service (IRS), is a federal executive department of the United States government responsible for administering and enforcing federal tax laws in the United States. There

4

are two separate divisions of the IRS called the "Master File Unit" and the "Non-master File Unit," the latter of which is used by career politicians and others to target innocent Americans and business entities.

21.   All of the defendants are government actors, employees, subcontractors and/or entities of the United States government.

22.   All of the defendants had knowledge of this matter and are/were involved in the conspiracy, negligence and denial of plaintiff's rights resulting in the outrageous government conduct toward her.


### D. FACTS PERTAINING TO THE CASE

23.   Plaintiff  Joan Farr is a 65-year old widow whose main residence is in Kansas. She also owns a small home in Tulsa, Oklahoma where she relocated her business in 2013.

24.   Ms. Farr has never been charged with any crime.

25.   Plaintiff has not been able to acquire legal representation since 2000 when she tried to save her homebuilding business from going under and 45 lawyers were influenced not to represent her.

26.   As a result of this experience, plaintiff founded a non-profit organization called the Association for Honest Attorneys (A.H.A!) to help people find honest lawyers. It was an educational organization but also faith-based, since they always quoted the Bible in their newsletters.

27.   Plaintiff was C.E.O. of the A.H.A! from 2003 – 2019. During that time, she helped thousands of innocent people who were being targeted by the government, mostly women and Christians.

28.   Ms. Farr was also a pre-litigation consultant for 11 years. She retired on December 31, 2020.

29.   Plaintiff's current income is approximately $28,500 annually which is derived from Social Security and pensions.

30.   When plaintiff's husband died unexpectedly in 2006, she did not date anyone for 10 years. She chose instead to focus on raising her sons and her non-profit work.

31.   After his death, the government often tried to distract plaintiff from her A.H.A! activities by having "posers" try and friend her on Facebook to engage her in a romantic relationship.

32.   They were usually current or former men in the military who were widowers and had a daughter like she had always wanted. However, she never took the bait.

33.   In 2016, plaintiff ran into her old boyfriend from high school. They became involved in an

intimate relationship which lasted over three years.

34.   They often dined and traveled together, shared daily devotions, talked about future plans and attended a Bible study together. They would text each other as many as 10 times a day.

35.   God gave Ms. Farr many signs that her old boyfriend was her "soul mate," and she loved him deeply. He was her life.

36.   In March 2020, plaintiff decided to run as an Independent candidate for the United States Senate in Oklahoma where she had relocated her business in 2013 and owned a small home.

37.   Ms. Farr used mostly her own money to run for office, even though she didn't have much. She had never taken a salary as C.E.O. of the A.H.A! and except for 2019 when she got a windfall, her family had been living at poverty level for over 15 years.

38.   Her opponent was incumbent Republican Senator James Inhofe who was 86 years old. He was a wealthy career politician who has been in Congress for 33 years and politics for 53 years.

39.   Senator Inhofe earns $176,000 annually as a United States Senator. He is the 18th wealthiest senator in Congress and is reportedly worth an estimated $7.5 million dollars.

40.   From 2018 – 2020, Senator Inhofe was Chairman of the Armed Services Committee over all of the United States military. The military conducts surveillance on people using various methods, the majority of which is done electronically through their cell phones, computers and other devices.

41.   On April 8, 2020, plaintiff filed to run for the United States Senate in Oklahoma against defendant Senator Inhofe (EXHIBIT A).

42.   On April 9, 2020, Senator Inhofe wrote a letter to Ms. Farr thanking her for her "generous contribution" to his re-election campaign. (EXHIBIT B).

43.   After receiving this letter on or about April 14, 2020, Ms. Farr posted a copy of it on Facebook. She commented that this was not actually true, she had donated $1,000 to him two months prior for his assistance in helping her acquire the Medal of Honor for her father killed in Viet Nam.

44.   However, she quipped in her post, that since Senator Inhofe wasn't able to accomplish this, she would have to help her father get the medal when she got into office.

45.   On or about April 16, 2020 a close family member of plaintiff's was targeted by the government and given Covid using Directed Energy Weapons (DEW). He was sick for three weeks and recovered, but his roommate later died.

6

46.   It was at this point that plaintiff realized that Senator Inhofe was involved in conspiracy and collusion with the defendants to target her and her loved ones just for running against him.

47.   Shortly thereafter, Ms. Farr sent an email to Senator Inhofe telling him that she would have to sue him if he did not stop targeting her and her family. He responded by retaliating to break up her relationship with her soul mate.

48.   In May, 2020, plaintiff's old boyfriend told her he was interested in another woman named Christine whom he had run into a few times and had taken to lunch. Plaintiff was upset and told him that their relationship was over, unaware at the time that Christine was a "poser" working for "alphabet soup" at Senator Inhofe's direction (EXHIBIT C).

49.   Christine was younger, prettier and healthier than plaintiff. Her old boyfriend said that he had just kept running into her when actually, she was surveilling him and knew the places that he frequented.

50.   Senator Inhofe and the government knew from monitoring plaintiff's phone texts that she was deeply in love with her old boyfriend, and that by placing a younger attractive woman in his path who had his similar interest in cycling that this would break up plaintiff's relationship with him.

51.   Plaintiff was devastated when they did not make up right away like they usually did when they had a tiff. She became severely depressed and could hardly campaign.

52.   In June, plaintiff's ex told her in a telecon that Christine was an LPN and she was a Catholic. However, she'd had a falling out with the Catholic church (he didn't ask why) and now she just helped out at different area churches.

53.   Plaintiff knew from her past work experience that the government uses spies to monitor churches for compliance with non-profit rules and regulations. She tried to warn him that Christine was a "poser"working for the government and was deceiving him.

54.   Plaintiff also knew from past experience that local hospitals often contracted out their hiring of employees and that "alphabet soup" often recruited medical personnel in hospitals as "posers" for their clandestine activities.

55.   Ms. Farr's ex did not believe plaintiff's claims and continued to see Christine.

56.   Christine took her ex on long bicycle rides of 100 miles or more so that he would become exhausted and not want to engage in intimacy.

57.   She brainwashed him into focusing on being productive and staying busy instead of

thinking about his prior romance with Ms. Farr. Soon he began to make comments to plaintiff which suggested that any affection toward a woman was sinful.

58. Plaintiff realized that Christine was brainwashing him and became even more depressed. She would often cry uncontrollably, her anxiety worsened and she began to drink more.

59. She knew that it was God's will for them to be together, but now her dreams were shattered. Her heart was broken.

60. Christine's activities were not only to break up plaintiff's relationship but to eventually convert her ex's assets using the legal system. He was a wealthy man who had never married.

61. In her past non-profit work, plaintiff had been involved in many cases in Kansas where members of the government were using lawyers and/or government operatives to fraudulently extort money into the legal system from unsuspecting wealthy people mainly in divorce/custody battles.

62. The most notable was that of John Sigg in Iola, Kansas whose business lawyer began having an affair with his wife of 40 years. His divorce continued for 12 years as lawyers/judges funneled over $2,000,000 of his money into the legal system (see Case #06-2436).

63. Senator Inhofe and government state actors continued to try and sabotage plaintiff's campaign. Plaintiff's website domain company confirmed that incoming emails to her had been blocked by AOL/Yahoo for months, and she was unable to respond back to the few emails that did come through (EXHIBIT D).

64. Ms. Farr's social media accounts and some online donations were also being blocked, so she filed a report with the FBI on July 6, 2020. They did not respond.

65. It was apparent to Ms. Farr that her social media accounts including Facebook were being illegally surveilled by Senator Inhofe and the government to subvert her campaign. He was also controlling the mainstream media to keep her from acquiring any publicity.

66. In August, 2020, plaintiff spoke to a man in the Wichita area who admitted to her that he had been a "poser" and had worked for the government there. He told her that after he had gotten out of the Air Force, "alphabet soup" had approached him to spy at a company, and although he was never asked to break up a relationship, he knew that it went on.

67. Plaintiff tried her best to get involved in campaigning. She was invited to attend a "Boots, Bandanas & BBQ" event at the governor's mansion in Oklahoma on September 2, 2020, so she went.

68. There she met a man who told her he had planned to run against Senator Inhofe 15 years earlier.

However, he said he backed out when Senator Inhofe threatened him and got his wife fired.

69.   Plaintiff did not want her old boyfriend to get taken to the cleaners by Christine and the other defendants. So she expressed concern for him in her October A.H.A! newsletter (EXHIBIT E).

70.   Plaintiff's ex was offended by this and distanced himself from her further.

71.   Of course, Ms. Farr lost badly to Senator Inhofe in the November 2020 election.

72.   Due to Senator Inhofe's abuse of power and the actions of the defendants to cause her emotional distress and bodily harm, plaintiff could no longer engage in her normal business activities. She retired on December 31, 2020.

73.   During her campaign and up until February 2021, plaintiff had contacted Senator Inhofe's office on four separate occasions telling him she would have to sue him if he did not stop targeting her and asked him to send Christine on another assignment. He refused and her remarks only made him target her more.

74.   Ms. Farr was further depressed after seeing the fraud that occurred to keep President Trump from being rightfully re-elected. In late January, 2021, she shut down her websites, went off of social media and decided to go "off the grid" in a new direction.

75.   In March, 2021, plaintiff contacted senators in Kansas and Oklahoma to help expedite her efforts to adopt a little girl in another state and to end the targeting against her once and for all.

76.   On the early morning of Friday, March 26, 2021, she mentioned in a telecon to an assistant at the Kansas senator's office that she just wanted to adopt a little girl and move away. This triggered Senator Inhofe to target plaintiff again and try to obtain $109,000 in back taxes she never really owed.

77.   On Monday, March 29, 2021, Ms. Farr received a certified letter from the IRS notifying her of their intent to levy liens on her homes in Kansas and Oklahoma that she had been trying to sell.

78.   When she called the IRS that day, Agent Joseph Ibarra told her that they had already filed liens against both of her houses and that she would be getting another letter to this effect soon.

79.   This made no sense since in May 2019 after receiving a lump sum of $48,000 from a client, plaintiff had tried to offer this money as a compromise through both the IRS and Senator Inhofe's office when she didn't even owe it. They did not respond, so she went on to buy her small home in Tulsa.

80.   In the same telecon on March 29, 2021, plaintiff told IRS Agent Ibarra that they were past the 10-year statute of limitations for trying to collect on the $109,000 in taxes they had falsely assessed against

her. He told her that she could argue this at the hearing if she filed an appeal.

81.   Plaintiff never owed the IRS $109,000. She had always paid her taxes, but the IRS had fabricated these numbers from an audit of her non-profit organization in 2013.

82.   In fact, non-profit groups like plaintiff's organization (the A.H.A!) who had used the words "Tea Party" or "patriot" in their literature were targeted by the IRS during that time. IRS official Lois Lerner was later fired, and the groups had won a $3.5 million settlement against the IRS (EXHIBIT F).

83.   Now the IRS liens were causing plaintiff to lose a contract on a property she was trying to buy in another state, and she stood to lose over $60,000 in equity if she sold her home in Tulsa.

84.   Plaintiff suffered mental anguish wondering if she was going to end up out on the street.

85.   On or about March 26, 2021, plaintiff became aware that her ex-boyfriend was fixing up his basement with the intent of having Christine move in. She feared this would lead to the illegal extortion of his assets by Christine who could then claim common law marriage, break-up with him and use the legal system to convert his assets to the defendants – another "mission accomplished."

86.   On April 6, 2021, plaintiff was so distraught that she had a meltdown at her Bible study. There was no end in sight to the arrogance and oppression of the defendants, especially Senator Inhofe, in targeting her just because she ran against a career politician and was a Christian.

87.   On April 7, 2021 in an e-mail exchange with the Kansas senator's office, plaintiff tried to find out what agency Christine worked for so they could direct a congressional inquiry. They told her that they could do an inquiry for her to try and remove her from the FBI National Security Watchlist but refused to tell her which agency Christine worked for, stating that this would be "unethical, unprofessional and illegal" according to the US Board of ethics rules and regulations.

88.   Plaintiff asked which rule they were referring to, but they could not cite any.

89.   In truth, the government did not want Christine's identity revealed in the same way that **Valerie Plame** had been outed as a CIA agent in 2003. Since Christine was about to make them a lot of money by swindling plaintiff's ex, they didn't want to risk losing it.

90.   Plaintiff was so stressed over the thought of her ex losing all of his money that she suffered a pinched nerve in her neck, was on medication and had to see an acupuncturist and chiropractor.

91.   Plaintiff suffered severe emotional distress and bodily harm as the result of defendants' actions to illegally conduct surveillance of her, target her and her family member, break up her relationship, sabotage

10

her campaign and file liens to deprive her of her property.

92.  The defendants were all involved in conspiracy/collusion, negligence and fraud by comission to deny plaintiff her inalienable right to "life, liberty and the pursuit of happiness."

93.  The harassment and targeting by Senator Inhofe and the government is continued and ongoing retaliation to violate plaintiff's rights including her right to freedom of speech under the First Amendment.

94.  Spying on U.S. citizens is illegal under Section 215 of the Patriot Act and FISA, but the defendants illegally initiated covert surveillance anyway and deprived plaintiff of her rights.

95.  Senator Inhofe and the government authorized surveillance and harassment against plaintiff in violation of FISA and the Patriot Act. Their actions were willful and wanton to illegally invaded plaintiff's cell phone and computer and monitor her activities.

96.  The violation of plaintiff's rights also included those under Color of Law 42 USC 1983, 18 USC 242, her Fourth Amendment right to privacy, and her right to due process of law and equal protection under the 14th Amendments to the U.S. Constitution.

97.  Plaintiff has exhausted all administrative efforts to try and stop the illegal and unwarranted surveillance and malicious targeting by Senator Inhofe and the government against her and her loved ones to cause her intentional emotional distress and bodily harm.

98.  Such extreme targeting of American citizens who run against wealthy incumbent career politicians for a political office is an abuse of power and outrageous government conduct. It should not be allowed to continue.

99.  In fact, President Trump vowed to remove innocent people from the terrorist watchlist in a debate with Hillary Clinton on September 29, 2016.  But he was unable to fulfill this campaign promise.

100.  Ms. Farr is within the statute of limitations for the time allowed for her to sue the defendants for damages in this matter. It began to run in May 2019 when a tax debt relief specialist told her that Senator Inhofe was likely behind her IRS targeting which resulted in the $109,000 assessment against her.

101.  Plaintiff has demanded that defendants take action to make her whole for her losses. Defendants have refused plaintiff's demands.

### E.  LAW AND ANALYSIS

Defendants violated numerous national laws, statutes, ordinances and regulations, including but not

limited to:  Denial of Rights Under Color of Law (42 USC 1983), 18 U.S.C. 242, right to freedom of speech

under the First Amendment, right to privacy under the Fourth Amendment (as incorporated to the states

through the 14th Amendment) and plaintiff's right to due process and equal protection under the 14th

Amendment to the United States Constitution, conspiracy/collusion, fraud by comission and intentional

emotional distress. Denial of Rights Under Color of Law 42 USC 1983 states:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State
> or Territory, subjects, or causes to be subjected, any citizen of the United States or any other person
> within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other
> proper proceeding for redress."

This applies to the plaintiff through the states under the 14th Amendment, since "all persons shall not

be deprived of ...life, liberty, or property, without due process of law; nor deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1. In addition, 18 U.S.C. 242 states:

> "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any
> person in any State... to the deprivation of any rights, privileges, or immunities, secured or
> protected by the Constitution or laws of the United States... shall be fined under this title or
> imprisoned not more than one year, or both; and if bodily injury results from the acts committed
> in violation of this section or if such acts include the use, attempted use or threatened use of a
> dangerous weapon (DEW)... shall be fined under this title or imprisoned not more than ten years, or
> both; and if death results from the acts committed in violation of this section... or an attempt to kill,
> shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be
> sentenced to death."

The overt acts of fraud by commission and collusion in this matter which were engaged in by the

defendants to deprive plaintiff of her rights include but are not limited to: denying plaintiff's right to be free

from retaliation regarding her freedom of speech, denying her due process and her right to privacy by

illegally surveilling her under the FBI National Security Watchlist, FISA and the Patriot Act, targeting her

family member with Directed Energy Weapons (DEW) to give them Covid which are crimes against

humanity under the War Crimes Act, setting up a covert operation to destroy plaintiff's relationship with her

boyfriend and later convert his assets to the defendants, engaging in communications with defendants and

state/government actors to sabotage her campaign so that she would have no chance of winning the election,

blocking emails and donations to her campaign, and filing liens against her homes in Kansas and Oklahoma

to deprive her of her property. The defendants were acting in privity and their ultimate goal was to deny

plaintiff her inalienable right to "life, liberty and the pursuit of happiness." E.O. S-1233, DOD Directive S-3321.1 and National Security Directive 130 also states: "The United States military and Intelligence Communities are forbidden by law from targeting U.S. citizens with PSYOPS within U.S. borders." Furthermore, the federal government and its agents thereof are prohibited from committing acts of war upon unarmed, non-combatant civilians." 18 U.S.C. 2441.

The federal court has jurisdiction in this matter under 28 U.S.C. 1331, since the plaintiff is suing the United States government and various departments, agencies and state actors, known and unknown, thereof. This case warrants claims involving tort of outrage, bad faith, outrageous government conduct, abuse of power and manifest injustice. The defendants acts are indicative of legalized stealing/extortion and harassment of plaintiff and her family to violate her rights. Accordingly, plaintiff is justified in alleging each of the following claims against the defendants.

### 1.   Violations of Plaintiff's First Amendment Right to Freedom of Speech (as incorporated to the States through the 14th Amendment)

102.   Plaintiffs incorporate by reference paragraphs 1 through 101 of this Complaint.

103.   The conduct of all of the defendants (the United States government, DOD, DOJ, FBI, CIA, NSA, Senator Inhofe, Christine (a state actor), "alphabet soup," and other known/unknown state actors) to engage in unwarranted and illegal domestic surveillance under the FBI National Security Watchlist to retaliate without good cause against Ms. Farr for her statements to Senator Inhofe and for running for office against him violated her right to freedom of speech under the First Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment.

104.   The conduct of the above named defendants to engage in unwarranted and illegal domestic surveillance to target plaintiff's family member and give him Covid, set up a covert operation to break up her relationship, block emails and donations to her campaign, and file liens against her property in retaliation for her comments to Senator Inhofe and the government to try and get them to cease targeting her deprived plaintiff of her right to freedom of speech under the First Amendment to the Constitution pursuant to 42 USC 1983 and 18 USC 242.

13

105.   The above named defendants owed plaintiff a duty not to violate her right to freedom of speech under the aforementioned laws.

106.   The above named defendants breached the duty owed the plaintiff.

107.   As a result of the defendants' conduct in violating Ms. Farr's freedom of speech, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; (vi) punitive damages; and (vii) any other relief deemed just and equitable by the court.

## 2.   Violations of Plaintiff's 4th Amendment Right to Privacy
### (as incorporated to the States through the 14th Amendment)

108.   Plaintiffs incorporate by reference paragraphs 1 through 107 of this Complaint.

109.   The conduct of all of the defendants (the United States government, DOD, DOJ, FBI, CIA, NSA, "alphabet soup," Senator Inhofe, Christine (a state actor), and other known/unknown state actors) to engage in unwarranted and illegal domestic surveillance under the FBI National Security Watchlist without good cause violated his right to privacy under the 4th Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment.

110.   The conduct of the above named defendants to engage in unwarranted and illegal domestic surveillance to target plaintiff's family member and give him Covid, set up a covert operation to break up her relationship, block emails and donations to her campaign, and file liens against her property in retaliation for her comments to Senator Inhofe to try and get him to cease targeting her deprived plaintiff of her right to privacy under the Fourth Amendment to the Constitution pursuant to 42 USC 1983 and 18 USC 242.

111.   The conduct of the above named defendants to engage in unwarranted and illegal domestic surveillance and harassment deprived her of her right to privacy under the Constitution pursuant to 42 USC 1983 and 18 USC 242.

14

112.    The above named defendants owed plaintiff a duty not to violate her right to privacy under the aforementioned laws.

113.    The above named defendants breached their duty owed the plaintiff.

114.    As a result of the defendants' conduct in violating Ms. Farr's privacy, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; (vi) punitive damages; and (vii) any other relief deemed just and equitable by the court.

## 3. Violations of Plaintiff's 14th Amendment Right to Due Process and Equal Protection Under the Law

115.    Plaintiff incorporate by reference paragraphs 1 through 114 of this Complaint.

116.    The conduct of the defendants (the United States government, DOD, DOJ, FBI, CIA, NSA, "alphabet soup," Senator Inhofe, Christine (a state actor), and other known/unknown state actors) to engage in unwarranted and illegal domestic surveillance and harassment of plaintiff under the FBI National Security Watchlist without good cause violated her right to due process of law and equal protection under the 14th Amendment to the United States Constitution.

117.    The conduct of the above named defendants to engage in unwarranted and illegal domestic surveillance and harassment under the FBI National Security Watchlist deprived her of her right to due process and equal protection under the 14th Amendment to the Constitution pursuant to 42 USC 1983 and 18 USC 242.

118.    The above named defendants owed plaintiff a duty not to violate her right to due process and equal protection under the aforementioned laws.

119.    The above named defendants breached the duty owed to the plaintiff.

120.    As a result of the defendants' conduct in violating Ms. Farr's right to due process and equal

15

protection, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; (vi) punitive damages; and (vii) any other relief deemed just and equitable by the court.

### 4. Violations of FISA and the Patriot Act

121.    Plaintiff incorporates by reference paragraphs 1 through 120 of this Complaint.

122.    The conduct of the defendants (the United States government, DOD, DOJ, CIA, NSA, FBI, "alphabet soup," Christine (a state actor) and known/unknown state actors) to conduct unwarranted and illegal domestic, physical and electronic surveillance and harassment of plaintiff and her family member constitutes a violation of the Foreign Intelligence Surveillance Act of 1978 and the USA Patriot Act.

123.    Under the FBI National Security Watchlist, the above named defendants caused to be conducted willful and intentional electronic and electromagnetic surveillance of plaintiff and her family member without good cause and without a warrant (i.e., telephone and computer monitoring, covert operations to target her family member and boyfriend, blocking campaign emails and donations, filing IRS liens against her properties).

124.    The above named defendants conduct was an invasion of plaintiff's privacy and attempt to cause intentional emotional distress and bodily harm in violation of FISA and the Patriot Act.

125.    The above named defendants owed plaintiff a duty not to conduct unwarranted surveillance of her and her family to invade her privacy or to cause her mental anguish and bodily harm.

126.    The above named defendants breached their duty owed the plaintiff in this matter.

127.    As a result of the defendants' unwarranted surveillance and invasion of privacy, plaintiff suffered harm in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment

interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above

named defendants from continuing plaintiff's right to equal protection; (vi) punitive damages; and (vii) any

other relief deemed just and equitable by the court.

## 5.   Civil Conspiracy and/or Collusion

128.   Plaintiffs incorporate by reference paragraphs 1 through 127 of this Complaint.

129.   The conduct of the defendants (the United States government, DOD, DOJ, CIA, NSA, FBI,

IRS, "alphabet soup," Christine (a state actor) and known/unknown state actors) to devise a plan to conduct

willful and intentional electronic and electromagnetic surveillance of plaintiff and her family without good

cause and without a warrant include telephone and computer monitoring, covert operations to target her

family member and break up her relationship, blocking campaign emails and donations, and filing IRS liens

against her properties constitutes civil conspiracy and/or collusion.

130.   By participating in a plan to target plaintiff in the above manner, the defendants acted with the

intent of engaging in illegal and unethical activities to cause Ms. Farr intentional emotional distress/bodily

harm and to deprive her of her property, having full knowledge that such acts were substantially certain to

result in injury and detriment to plaintiff and her family.

131.   Defendants used state actor Christine to coerce plaintiff's old boyfriend away from her and

deprive her of his love and affection to cause her emotional distress, anxiety and depression.

132.   The conduct of the defendants in conspiring to cause bodily harm to plaintiff and her family

member, ruin her relationship, sabotage her campaign, and file liens against her property which destroyed her

relationships with friends and family and damaged her health constitutes civil conspiracy and/or collusion.

133.   The conduct of all of the defendants set forth herein constitutes civil conspiracy and/or

collusion.

134.   As a result of the defendants' civil conspiracy and/or collusion, plaintiff has been damaged in

excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants

awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment

interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above

named defendants from continuing plaintiff's right to equal protection; (vi) punitive damages; and (vii) any

other relief deemed just and equitable by the court.

### 6.  Fraud By Comission/Intentional Fraud

135.  Plaintiff incorporates by reference paragraphs 1 through 134 of this Complaint, in which fraud is stated with particularity.

136.  The conduct of the defendants (the United States government, DOD, DOJ, CIA, NSA, FBI, IRS, "alphabet soup," Christine (a state actor) and known/unknown state actors) to devise a plan to conduct willful and intentional electronic and electromagnetic surveillance of plaintiff to target her and her family member, break up her relationship, block campaign emails and donations, and file IRS liens against her properties constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiff to act to her detriment.

137.  The overt acts of fraud engaged in by the defendants include, but are not limited to: telephone calls, meetings, verbal and written communications, mental processes, and the unjust and illegal surveillance of plaintiff and her family member under the FBI National Security Watchlist.

138.  At all relevant times, the above defendants' participation in a plan to target plaintiff and cause her and her family member severe emotional distress and bodily harm was willful and wanton, and with full knowledge that such conduct was substantially certain to result in injury and/or death and detriment to the plaintiff.

139.  The defendants' conduct constitutes fraud by comission/intentional fraud.

140.  As a result of the defendants' fraud by comission/intentional fraud, plaintiff has been damaged in excess of $75,000.000.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; (vi) punitive damages; and (vii) any other relief deemed just and equitable by the court.

### 7.  Outrageous Government Conduct Causing Intentional Infliction of Emotional Distress/Tort of Outrage

141.  Plaintiff incorporates by reference paragraphs 1 through 140 of this Complaint.

142.   The conduct of the defendants (the United States government, DOD, DOJ, CIA, NSA, FBI, IRS, "alphabet soup," Christine, and known/unknown state actors) in participating in a plan to target plaintiff and her family member was extreme and outrageous. Their conduct to participate in a plan to engage in willful and intentional electronic and electromagnetic surveillance of plaintiff and her family member without good cause and without a warrant include telephone and computer monitoring, covert operations to target her family member and break up her relationship, block campaign emails and donations, and file IRS liens against her properties constitutes civil conspiracy and/or collusion.

143.   The defendants' conduct to illegally put plaintiff under surveillance and cause her intentional emotional distress and bodily harm without good cause was extreme and outrageous.

144.   At all relevant times, the defendants' participation in a plan to conduct illegal and unwarranted surveillance of plaintiff involving covert operations to cause her severe emotional distress and bodily harm was intentional, willful and malicious, and with full knowledge that their conduct was substantially certain to result in severe emotional distress and bodily harm to plaintiff and her family member.

145.   By participating in the plan to conduct illegal surveillance of plaintiff under the FBI National Security Watchlist to cause her severe emotional distress, mental anguish and bodily harm, the defendants breached their duty owed the plaintiff. Their conduct was grossly disproportionate under such circumstances, and amounted to an abuse of power that shocks the conscience of any reasonable person.

146.   The conduct of the defendants and others to participate in targeting plaintiff and her family member under the National Security Watchlist knowing they were innocent, was in bad faith and violated the duties of good faith and fair dealing toward the plaintiff.

147.   Due to the defendants' acts and failures to act, plaintiff suffered severe emotional distress and bodily harm as a result of their participation in the targeting to cause her extreme pain and suffering, including, but not limited to:  severe depression, the loss of love and affection of her soul mate, increased anxiety, lost friendships, inability to continue working, insomnia, neck pain and nightmares.

148.   The conduct of the defendants was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Reciting the facts in this matter to an average person causes resentment toward all defendants, and leads

them to exclaim: "Outrageous!"

149. The outrageous conduct of the defendants constitutes intentional infliction of emotional distress/bodily harm and liability to plaintiff for her injuries.

150. Due to the emotional distress resulting from the illegal acts and failures to act directed at plaintiff by the defendants, Ms. Farr suffered severe emotional distress and bodily harm.

151. As a result of the outrageous conduct by all defendants, plaintiff has been damaged in excess of $250,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $250,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; (vi) punitive damages; and (vii) any other relief deemed just and equitable by the court.

Respectfully submitted,

By: _Joan E. Farr_

Joan E. Farr, plaintiff *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

## DESIGNATION OF TRIAL

Plaintiff designates Kansas City, Kansas as the location for the trial in this matter.

Respectfully submitted,

By: _Joan E. Farr_

Joan E. Farr, plaintiff *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

Respectfully submitted,

By: _Joan E. Farr_

Joan E. Farr, plaintiff *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of April, 2021, a copy of the above and foregoing Complaint and Summonses were filed with the United States District Court for the District of Kansas, and copies deposited in the United States mail, certified, return receipt and properly addressed, to:

Secretary Lloyd J. Austin III
Department of Defense
The Pentagon
Washington, D.C. 20301

Atty. Gen. Merrick B. Garland
Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530

Atty. Gen. Merrick B. Garland
FBI Headquarters
935 Pennsylvania Ave., NW
Washington, D.C. 20535

U.S. Senator James Inhofe
3817 NW Expressway #780
Oklahoma City, OK 73112

William J. Burns
Director of National Intelligence
Central Intelligence Agency
Washington, D.C. 20501 *(2 copies)*

William M. Paul
IRS Office of Chief Counsel
1111 Constitution Ave., NW
Washington, D.C. 20224

_Joan E. Farr_

Joan E. Farr, plaintiff *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com

STATE OF KANSAS        }
                       } ss:
SEDGWICK COUNTY        }

BE IT REMEMBERED that on this 21 day of April, 2021, Joan E. Farr, personally known to me to be the person who executed the foregoing instrument of writing, appeared before me personally and duly acknowledged and executed same. IN TESTIMONY WHEREOF, I have hereunto set my hand and notarial seal for the above county and state, the day and year above written.

_Brock Stuhlsatz_
Notary Public

My appointment expires:

